UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DIANA TOPOULOS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 16-cv-11636-IT |
| | * | |
| NANCY A. BERRYHILL, Acting | * | |
| Commissioner of Social Security, | * | |
| | * | |
| Defendant. | * | |

ORDER ADOPTING REPORT & RECOMMENDATION

March 16, 2018

TALWANI, D.J.

Plaintiff Diana Topoulos filed this action challenging the final decision of the

Commissioner of the Social Security Administration (the "Commissioner") denying her claim

for Social Security Disability Insurance and Supplemental Security Income benefits. This court

referred the matter to a Magistrate Judge. The court has now considered the Magistrate Judge's

February 26, 2018, Report and Recommendation [#26] and Plaintiff's timely Objection to Report

and Recommendation [#27], reviewing *de novo* those portions of the Report to which Plaintiff

properly objected pursuant to Federal Rule of Civil Procedure 72(b)(3).

Plaintiff's sole specific objection is that the Social Security Administrative Law Judge's

("ALJ") conclusion that Plaintiff's mental impairments are not "severe" is not supported by

substantial evidence, and the Magistrate Judge erred in holding to the contrary. Plaintiff cites to

portions of the record that the ALJ expressly gave little weight, yet fails to address any of the

evidence on which the ALJ relied that demonstrates Plaintiff's functional abilities after her onset

date. The Magistrate Judge thoroughly summarized and analyzed this evidence. For the reasons

set out in pages 22 through 26 of the Magistrate Judge's Report, the court overrules Plaintiff's objection and concludes that substantial evidence supports the ALJ's determination.

Accordingly, the court ACCEPTS and ADOPTS the Report and Recommendation [#26]. Plaintiff's Motion for Order Reversing the Decision of the Commissioner [#16] is DENIED, and the Commissioner's Motion to Affirm the Commissioner's Decision [#17] is ALLOWED.

IT IS SO ORDERED.

March 16, 2018 /s/ Indira Talwani
United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DIANA TOPOULOS,               )
                                    )
         Plaintiff,        )
    v.                         )        CIVIL ACTION
                                      )        NO. 16-11636-IT
NANCY A. BERRYHILL,[1] Acting    )
Commissioner of Social Security,    )
                                    )
         Defendant.      )

# REPORT AND RECOMMENDATION ON CROSS-
# MOTIONS REGARDING DENIAL OF SOCIAL SECURITY BENEFITS

February 26, 2018

DEIN, U.S.M.J.

## I.  INTRODUCTION

The plaintiff, Diana L. Topoulos ("Topoulos"), has brought this action pursuant to sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), in order to challenge the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claims for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits. The matter is before the court on the "Plaintiff's Motion for Order Reversing the Decision of the Commissioner" (Docket No. 16), by which the plaintiff requests that the court reverse the decision to deny her claims for benefits. It is also before the court on the "Defendant's Motion to Affirm the Commissioner's Decision"

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill has been substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this action.

(Docket No. 17), by which the Commissioner is seeking an order upholding her determination that Topoulos is not disabled within the meaning of the Social Security Act, and is therefore not entitled to SSI or SSDI benefits.  At issue is whether the decision of the Administrative Law Judge ("ALJ") that Topoulos was not disabled is supported by substantial evidence.  In particular, Topoulos argues that the ALJ erred by finding that she did not suffer from a severe mental impairment, and that her severe mental impairment, "when combined with her back difficulties, including constant, excruciating pain that made her forgetful, unable to concentrate, severely limited her ability to sit, stand, walk and lift and necessitated her frequently lying down," precludes her from engaging in "all work on the open labor market."  (Pl. Mem. (Docket No. 16-2) at 12).

In support of her position, Topoulos argues that the ALJ did not appropriately credit certain documents in her medical records.  However, a careful review of the record below, as well as the ALJ's decision, compels the conclusion that the ALJ's determination that Topoulos was not disabled is supported by substantial evidence.  Therefore, this court recommends to the District Judge to whom this case is assigned that the plaintiff's motion be DENIED and that the defendant's motion be ALLOWED.

## II.  <u>STATEMENT OF FACTS</u>[2]

### <u>Procedural History</u>

On April 8, 2013, Topoulos filed applications for SSDI and SSI, claiming that she had been unable to work since January 1, 2009 due to radiculopathy, lumbar spondylosis, mild facet

---

[2]  References to pages in the transcript of the record proceedings shall be cited as "Tr. ___."  The ALJ's Decision shall be cited as "Dec." and can be found beginning at Tr. 11.

arthropathy, PTSD, anxiety, and "severe depression." (Tr. 225, 227, 254). Her applications

were denied initially on July 18, 2013, and upon reconsideration on October 22, 2013. (Tr. 161-

166, 171-176). Topoulos then requested and was granted a hearing before an ALJ, which took

place on October 9, 2014 in Boston, Massachusetts. (Tr. 42-106). The claimant, who was repre-

sented by counsel, appeared and testified at the hearing. (Id.). The ALJ also obtained testi-

mony from Mr. James Sono, a vocational expert ("VE"), who described Topoulos' vocational

background based on her past work experience and responded to hypothetical questions that

were designed to determine whether jobs exist in the national and regional economies for an

individual with the same age, educational background, work experience and Residual

Functional Capacity ("RFC") as the plaintiff. (Tr. 99-104).

On March 26, 2015, the ALJ issued a decision denying Topoulos' claims for benefits. (Tr.

11-32). On May 22, 2015, Topoulos appealed the decision to the Appeals Council, which denied

review on June 15, 2016, thereby making the ALJ's decision the final decision of the Commis-

sioner for purposes of review. (Tr. 1-3, 7). Accordingly, the plaintiff has exhausted all of her

administrative remedies and the case is ripe for judicial review pursuant to 42 U.S.C. §§ 405(g)

and 1383(c)(3).

## Background

Topoulos was born on October 23, 1958, and was 55 years old at the time of her hearing

before the ALJ. (Tr. 46-47). She claimed that she had been unable to work since January 1,

2009.

Topoulos graduated from Brockton High School in 1976 and received a secretarial

certificate in 1979. (Tr. 48). From 1980-1982, she studied English and Psychology at

Bridgewater State College but did not finish.  (Id.).  From 1993-1998, Topoulos worked at a print company which she co-owned with her sister (Tr. 53-54), but left as part of a court-ordered buyout.  (Tr. 54-55).  In 1999, she worked as a cashier at Cumberland Farms (Tr. 53-54), and then returned to the family printing company in 2000, working there until she was laid off for economic reasons in May 2004.  (Tr. 55-58).  Topoulos then worked "under the table" at her boyfriend's print shop, Docuprint Express, from about 2004 through at least 2006.  (Tr. 59-60).  Topoulos left that job around August 2006 because she hurt her back and became depressed.  (Tr. 60).  In 2008, Topoulos completed an internship in medical coding and received a certificate.  (Tr. 48-49).  She then worked full time doing medical coding until December 11, 2008, when she was fired for submitting a timesheet for hours she could not document.  (Tr. 50-52).  There is evidence in the record that in around 2013 Topoulos went back to work at her boyfriend's shop, working at times more than 40 hours per week.  (Tr. 593, 603, 605, 607, 617).

Topoulos was married in 1987 and separated from her husband in or around 2000.  (Tr. 572, 705).  After her husband moved out of their home, he provided Topoulos with health insurance and $400 per week.  (Tr. 61, 613).  Topoulos has had a long term relationship with her boyfriend of at least 14 years, with whom she lived for at least six years.  (Tr. 59, 576).  Topoulos has three adult children, two of whom live with her.  (Tr. 76).

### Mental Health History After the Claimed Date of Disability

As the defendant asserts, "[t]here is no dispute that Plaintiff has a back condition that significantly limits her functioning.  There is also no dispute that she has intermittently sought treatment for depression, anxiety, and PTSD.  The relevant question is not whether Plaintiff was symptom-free, but whether her symptoms were severe enough to preclude all substantial

4

gainful employment." (Def. Mem. (Docket No. 18) at 12). The ALJ concluded that they were

not, and this conclusion is supported by substantial evidence in the record.

The record shows that since January 1, 2009, Topoulos has been treated on and off by

medical professionals for mental health concerns. Specifically, from April 27, 2011 through

June 9, 2011, she sought counseling from Berry & Lobel, P.C. ("Berry & Lobel") (Tr. 322-331);

from November 27, 2012 through August 6, 2013, she sought treatment with Theresa Smith, a

Registered Nurse, Nurse Practitioner, at Starr Psychiatric Center (Tr. 561-630); and in October

2014, she sought treatment with Shannon Murray, Psy.D. (Tr. 647-663). She was also treated

throughout the time period by her primary care physician, Joseph M. Weinstein, M.D. (Tr. 719-

954).

In Topoulos' medical history, Dr. Weinstein noted that Topoulos "has had a history of

depression" and has "improved dramatically with Effexor and nortriptyline." (Tr. 739). This

note appears to have been written around the time that Topoulos had "a new job working as a

coder for anesthesia." (Id.). Dr. Weinstein also noted at one point that Topoulos "has been

noted to have increasing symptoms of depression"; was seen "in the emergency room at South

Shore Medical Center on April 21, 2009" in relation to her depression; and "was referred for

outpatient psychiatric follow-up." (Tr. 740).

From April 27, 2011 through June 9, 2011, Topoulos sought counseling from Berry &

Lobel asserting major depression, PTSD, general anxiety, and panic attacks. (Tr. 322-331). She

reporting having had her first "full-blown panic attack" a few days prior to her first visit at Berry

& Lobel. (Tr. 328). In a mental status exam on April 27, 2011, it was noted that Topoulos was

not disoriented, distractible, hyperactive, or hostile. (Tr. 329). She had normal speech and

normal thought processes, without hallucinations or delusions. (Id.). Though she showed significant anxiety and moderate signs of tension and depressed mood, her affect was not "blunted" and she did not appear to be in "emotional withdrawal." (Id.). She exhibited slight suicidal ideation. (Id.). She was diagnosed with "major depressive disorder, moderate," and "panic disorder with agoraphobia," and was assigned a Global Assessment of Functioning (GAF) score of 50.[3] (Tr. 328). Treatment notes from that visit also indicate that Topoulos' activities included cleaning her house, doing yardwork, and taking care of her six cats. (Tr. 327). On May 25, 2011, her treatment notes indicated that Topoulos "continues to struggle with depression which results from chronic pain, aging, loss of best friends, etc." (Tr. 330). On June 9, 2011, her treatment notes indicated that Topoulos was frustrated that she "got no help" from her family with house chores and that the healthcare practitioner encouraged her to take a trip alone to Germany. (Tr. 331).

Topoulos next sought mental health treatment over a year later, on November 27, 2012, with Theresa Smith ("Ms. Smith"), a Registered Nurse, Nurse Practitioner, at Starr Psychiatric Center ("Starr"). The record indicates that she attended near-weekly therapy sessions with Ms. Smith through August 6, 2013. (Tr. 561-630). She sought treatment with Ms. Smith initially for thoughts of suicidality in the context of her home being foreclosed upon and her assertion that she was unable to work due to chronic back pain. (Tr. 566-67, 572-73). Upon initial presenta-tion, Ms. Smith diagnosed Topoulos with "PTSD" and "Mood Disorder NOS" and assigned a GAF

---

[3] See Amaral v. Comm'r of Soc. Sec., 797 F. Supp. 2d 154, 158 n.1 (D. Mass. 2010) (explaining that "[a] GAF score between 41 and 50 represents [s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." (quotations and citation omitted)).

score of 42.  (Tr. 572).  Topoulos was prescribed Lamictal for mood stability and weekly therapy to improve coping skills, and was weaned off of Effexor.  (Tr. 573).

Over the course of the next several months of treatment, Topoulos' mental condition appears to have steadily improved to the point where she went back to work at her boyfriend's bindery.  For example, on December 11, 2012, though she was tearful as she "review[ed] all the losses over her life," she reported no suicidal thoughts over the previous week.  (Tr. 576).  Ms. Smith prescribed Prazosin.  (Id.).  On December 18, 2012, her "mood appear[ed] improved." (Tr. 578).  On January 8, 2013, she reported "I seem better" and reported less depression and anxiety and fewer racing thoughts.  (Tr. 582).  Ms. Smith noted Topoulos' "improving mood" and "improving anxiety" and that she was "more stable."  (Id.).  On January 15, 2013, Topoulos had "much more mood stability" and was "feeling euthymic."  (Tr. 584).[4]  She appeared "pleasant," "well groomed" and "casually dressed," and she "engage[d] easily."  (Tr. 584).  Her thought process was "linear, logical, intact."  (Id.).  On February 12, 2013, Topoulos was prescribed Lithium.  (Tr. 591).

On February 19, 2013, Topoulos reported that she felt overwhelmed working at the bindery more than 40 hours per week, which had greatly increased her back pain.  (Tr. 593).  Ms. Smith observed that the fatigue and pain resulted in decreased mood, affect, insight and judgment, and poor self-care, but that Topoulos' speech was normal and her thought process

---

[4] "Euthymic is a form of the word 'euthymia.'"  Burke v. Astrue, No. CIV.A. 09-11514-JLT, 2010 WL 4181145, at *2 n.6 (D. Mass. Aug. 6, 2010), report and recommendation adopted, No. CIV.A. 09-11514-JLT, 2010 WL 4181141 (D. Mass. Oct. 20, 2010) (citing Stedman's Medical Dictionary 627 (27th ed. 2000)).  "Euthymia is defined as 'joyfulness; mental peace and tranquility.'"  Blais-Peck v. Colvin, No. 14-CV-30084-KAR, 2015 WL 4692456, at *2 n.6 (D. Mass. Aug. 6, 2015) (quoting Stedman's Medical Dictionary 678 (28th ed. 2006)).

was linear and intact. (Tr. 593). Ms. Smith diagnosed Topoulos with attention deficit disorder without hyperactivity. (Id.). On March 5, 2013, Topoulos reported that she self-terminated her lithium prescription and reported some mood instability but overall improvement. (Tr. 596). On March 26, 2013, Ms. Smith reported that "euthymia predominates." (Tr. 602). On April 2, 2013, she reported that Ms. Topoulos "has been working many hours . . . on her feet" and has "refused to consider decreasing [her] hours." (Tr. 603). Topoulos reported that her biggest problem at that point was pain. (Id.). On April 5, 2013, Ms. Smith prescribed Buspar. (Tr. 604). On April 9, 2013, Topoulos reported that she "took off" that day and the day before and that she planned to continue to only work part time. (Tr. 605). On April 16, 2013, Ms. Smith noted that Topoulos "continued to restrict her work schedule in order to tolerate pain" and that Topoulos continued to have an "improved stable mood." (Tr. 607).

On April 27, 2013, Topoulos reported a great response to Buspar, improved mood and decreased anxiety. (Tr. 609). She had some underlying sadness but was managing it well, and her thought process was intact, logical, and future oriented, with increased insight and intact judgment. (Id.). She planned to return to church with her daughter and to attend Alanon. (Id.). On April 30, 2013, Ms. Smith noted that Topoulos' mood was stable and euthymic, and her perceptions were greatly improved, which Ms. Smith attributed to medication, cognitive restructuring and improved coping skills. (Tr. 610).

On May 14, 2013, at a session with Ms. Smith, Topoulos was tearful as she described an incident at work where her boyfriend "lost it" but she regained control as the session progressed. (Tr. 613). On June 4, 2013, Topoulos was "happy to report" that she had taken up the hobby of jewelry making and brought in some jewelry to show Ms. Smith. (Tr. 614). On

June 22, 2013, Topoulos reported she had a bad week because her boyfriend had another angry outburst directed to her at work. (Tr. 617). She was well-groomed, dressed in a sundress with new sandals, and had a bright affect and stable mood. (Id.). On June 25, 2013, she reported that her relationship with her boyfriend continued to deteriorate, her mood was subdued, and she was tearful at times. (Tr. 619). However, Ms. Smith noted that Topoulos was responding with "appropriate grieving" and observed that Topoulos was attractively dressed in a sundress, had new highlights in her hair, and reported she was "not working" that day because she had "plans to catch up on personal business." (Id.).

On July 23, 2013, Topoulos was tearful and discouraged because her disability application was denied. (Tr. 624). Ms. Smith called Dr. Weinstein who reportedly stated "I believe [Topoulos] is 100% physically and emotionally disabled." (Id.). On August 6, 2013, Ms. Smith noted that while Topoulos was experiencing increased stress from the social security denial, conflict with her boyfriend and ex-husband, her mood was stabilized. Ms. Smith made no changes to Topoulos' psychopharmacological regimen. (Tr. 626). It does not appear from the record evidence that Topoulos returned to Ms. Smith after August 8, 2013.

The next time the record indicates that Topoulos visited a mental health professional was over a year later on October 3, 2014, when she met with Shannon Murray, Psy.D. ("Dr. Murray") for psychotherapy, who diagnosed her with "major depressive disorder, recurrent," "post traumatic stress disorder" and assessed a current GAF score of 45. (Tr. 649-59). At this point, Topoulos had stopped all of her medications except for Adderall and Methadone for pain. (Tr. 655). Dr. Murray observed no issues with Topoulos' appearance other than she was very thin, and observed no issues with posture, body movements, affect, attitude, perception,

or judgment. (Tr. 657). Her speech was slightly loud, but otherwise normal. (Id.). Her cognition was normal other than slight distractibility, and her thought content and form were normal other than moderate suicidal ideation. (Id.). Topoulos reported that she was unable to work consistently because of pain. (Tr. 658). The record ends with treatment notes from Dr. Murray from October 21, 2014, wherein Dr. Murray noted that Topoulos had a depressed mood. (Tr. 663).

Additionally, as part of her social security disability application, Topoulos filed an undated, unsigned "Function Report" in which she reported that she lived in her house with her family, was able to care for herself with pain medication, cared for her five cats, prepared dinner for herself and her adult children for one to one and a half hours a day, did basic household chores, was able to drive and go out alone, and shopped in stores for food and the like twice a week for an hour each time. (Tr. 273-78).

**State Agency Consultants' Opinions**

In connection with Topoulos' application for social security disability benefits, two state agency psychological consultants, Kathryn Collins-Wooley, Ph.D. and Michael Maliszewski, Ph.D., reviewed Topoulos' medical records and issued corresponding opinions on the severity of Topoulos' mental health impairments. In a report dated June 21, 2013, Dr. Collins-Wooley opined that Topoulos had "mild" restriction in the activities of daily living, "mild" difficulties in maintaining social functioning, "mild" difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation of extended duration. (Tr. 114, 126). Additionally, Dr. Collins-Wooley explained that while the claimant had anxiety and depression in the context of "a trauma history and chronic back pain[,]" "it is clear that she has continued

10

to work fulltime, with her boyfriend, with recent references to working more than 40 hours a week." (Id.). Dr. Collins-Wooley further noted that the psychiatric treatment provider notes indicated "stable mood, euthymic, coping skills greatly improved." (Id.).

In a report dated September 17, 2013, Dr. Maliszewski reviewed Topoulos' medical records and also opined that Topoulos had "mild" restriction in the activities of daily living, "mild" difficulties in maintaining social functioning, "mild" difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation of extended duration. (Tr. 140-41, 152-54).

**The ALJ's Decision**

The ALJ concluded that from January 1, 2009 through the date of his decision on March 26, 2015, Topoulos "ha[d] not been under a disability, as defined in the Social Security Act," which defines "disability" as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." (Dec. Finding #7; Tr. 32). See also 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). There is no dispute that the ALJ, in reaching his decision that Topoulos was not disabled, performed the five-step sequential evaluation required by 20 C.F.R. §§ 404.1520 and 416.920. The procedure resulted in the following analysis, which is further detailed in the ALJ's "Findings of Fact and Conclusions of Law." (See Dec. 3-22; Tr. 13-32).

The first inquiry in the five-step evaluation process is whether the claimant is "engaged in substantial gainful work activity[.]" Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001). If so, the

claimant is automatically considered not disabled and the application for benefits is denied. See id. In this case, the ALJ explained that after a review of the record evidence, including therapy notes from 2013 in which Topoulos reported to Ms. Smith that she was working at her boyfriend's bindery over forty hours a week (Tr. 593), and subsequent treatment notes from that year wherein Topoulos reported "working," being "at work," and having taken the "day off" work (Tr. 599, 603, 605, 607, 613, 617), the ALJ was "convinced that the claimant was working for Docuprint Express in 2013." (Dec. 5; Tr. 15). The ALJ found Topoulos' hearing testimony to the contrary to be not credible, given that Topoulos admitted to have previously worked "under the table" for that business and that her explanation that by "working" she meant working around the house was not believable, especially in light of the fact that the treatment notes explicitly referenced working at the bindery. (Id.; Tr. 60). However, despite being convinced that Topoulos had worked in 2013, the ALJ explained that because he was "unable to ascertain the number of hours [Topoulos] was working or her rate of pay[,]" he would "proceed[] to the next step in the sequential evaluation." (Dec. Finding #2; Tr. 13-15).

The second inquiry is whether the claimant has a "severe impairment," meaning an "impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is deemed not to be disabled and the application for benefits is denied. See Seavey, 276 F.3d at 5. Here, the ALJ determined that Topoulos suffered from the severe impairment of degenerative disc disease of the spine. (Dec. Finding #3; Tr. 15). The plaintiff claims that the ALJ erred by failing to find that her PTSD, anxiety, and depression also constituted severe impairments.

In connection with his finding at step two in the evaluation process, the ALJ reviewed the record with regard to Topoulos' mental health treatment and concluded that she "has been diagnosed with major depressive disorder, anxiety disorder, panic attacks with agoraphobia, mood disorder and attention deficit disorder[,]" but that her claimed mental impairments "do not cause more than minimal limitation in [her] ability to perform basic mental work activities and are therefore nonsevere." (Dec. 10; Tr. 20). He added that although Topoulos "does become overwhelmed by her situation, particularly in regards to her relationships with her boyfriend and children[,]" "she continues to engage in a full range of activities" and "the medical evidence as a whole shows that [she] has been able to function quite well since her alleged onset date." (Id.).

The ALJ further explained that in assessing Topoulos' functioning he gave "great weight" to the treatment records from Starr Psychiatric Center because "[w]hen the claimant was in treatment at [Starr] and taking her prescribed medications, she had an improved mood and functioning[.]" (Id.). He concluded that those records "indicat[e] the claimant's true functional capacity with appropriate treatment." (Id.). The ALJ further explained that he gave "very little weight" to the records of Dr. Murray "since [Topoulos] was no longer taking the medications that had been effective in the past and failed to disclose to [Dr.] Murray her past treatment at [Starr]."[5] (Id.). On appeal, the plaintiff does not directly challenge the weight the ALJ assigned to the record evidence. As detailed below, however, she does object to the ALJ's failure to adopt statements included in certain specified documents.

---

[5] While the record indicates that Dr. Murray was aware that Topoulos had engaged in counseling previously "for short periods," there is no evidence Dr. Murray had comprehensive information relating to her treatment. (Tr. 706).

13

The ALJ then proceeded to explain that "[i]n finding the claimant's mental impairments non-severe, [he] considered the four broad functional areas . . . known as the 'paragraph B' criteria[,]" which are "set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1)." (Id.).

The ALJ then applied the record evidence in the case to the paragraph B criteria, explaining as follows:

> The first functional area is activities of daily living. In this area, the claimant has mild limitation. The claimant is able to perform personal care tasks and light household chores, prepare meals for herself and her children, cares for five cats, attend church, and food shop in stores. In addition, she is able to watch TV, occasionally uses her tablet to surf the internet and check her Facebook account, attend medical and therapy appointments, and drive a car (Exhibits 5E, 15F, Hearing testimony). In addition both Dr. Collins-Wooley and Dr. Maliszewski, the state agency psychological consultants, opined that the claimant has only mild functional limitations in daily activities (Exhibits 1A, 2A, 5A, 6A).

> The next functional area is social functioning. In this area, the claimant has mild limitation. The claimant has been able to sustain significant interper-sonal relationships with her husband, despite their long-term separation, her three children, her long-term boyfriend and two friends. She is able to shop in stores despite anxiety, and she is able to interact appropriately with treatment providers (Exhibit 5E and hearing testimony). This finding is supported by the opinions of Dr. Collins-Wooley and Dr. Maliszewski that the claimant has only mild functional limitations in social functioning (Exhibits 1A, 2A, 5A, 6A).

> The third functional area is concentration, persistence or pace. In this area, the claimant has mild limitation. The claimant's mental health and psycho-pharmacological treatment notes show full orientation, logical and co-herent thought process and content without evidence of psychosis. While the claimant alleged fatigue and chronic pain affected her concentration and memory and Ms. Smith, her therapist, observed some disorganization, the claimant was able to concentrate sufficiently to work at a binding company in 2013 and to make jewelry as a hobby (Exhibit 15F). She has also been able to drive a car, make meals for everyone in the household for one to one and a half hours, shop for food twice a week for an hour at a time and take care of her children and five cats (Exhibit 5E). This finding is

supported by the opinions of Dr. Collins-Wooley and Dr. Maliszewski that the claimant has only mild functional limitations in [concentration, persistence or pace] (Exhibits 1A, 2A, 5A, 6A).

The fourth functional area is episodes of decompensation. There is no evidence that the claimant has experienced any episodes of decompensation, which have been of extended duration.

(Dec. 10-11; Tr. 20-21). Finally, the ALJ concluded "[b]ecause the claimant's medically determinable mental impairment causes no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area, it is nonsevere (20 CFR 404.1520a(d)(1) and 416.920a(d)(1))." (Dec. 11; Tr. 21).

The ALJ proceeded to step three of the analysis on the basis of his determination that Topoulos' back condition was a severe impairment. The third inquiry is whether the claimant has an impairment equivalent to a specific list of impairments contained in Appendix 1 of the Social Security regulations, in which case the claimant would automatically be found disabled. See Seavey, 276 F.3d at 5; 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). At this step, the ALJ explained that he reviewed the medical evidence of record to determine whether any physical or mental impairments, or combination of impairments meet or medically equal the list of impairments in Appendix 1 of the Social Security regulations, and specifically evaluated the claimant's spinal impairment under listing 1.04. He concluded that "the medical evidence of record does not contain the objective signs, symptoms, or findings, or the degree of functional restriction necessary for the claimant's physical impairments to meet or equal in severity any section of listing 1.00 or any other listed impairment." (Dec. Finding #4; Tr. 21). Consequently, he proceeded to step four.

The fourth inquiry asks whether "the applicant's 'residual functional capacity' is such that he or she can still perform past relevant work[.]" Seavey, 276 F.3d at 5. Thus, in order to answer this inquiry, the ALJ must first make an assessment regarding the claimant's RFC. In the instant case, the ALJ assessed Topoulos' RFC as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[6] except she can only occasionally climb ramps or stairs, but never ropes, ladders or scaffolds, and occasionally balance, stoop, kneel, crouch and crawl.

(Dec. Finding #5; Tr. 21 (footnote added)).

In reaching his conclusion regarding the plaintiff's RFC, the ALJ first considered all of Topoulos' symptoms and the extent to which those symptoms were consistent with the objective medical evidence and other evidence in the record. (Dec. 11; Tr. 21). Accordingly, the ALJ reviewed the plaintiff's medical records and considered the available opinion evidence, as well as statements that Topoulos had made at the hearing regarding her symptoms and the extent to which those symptoms interfered with her ability to carry out day-to-day activities. (See Dec. 5-22; Tr. 15-32). Because the ALJ found that Topoulos' medically determinable impairments could reasonably be expected to cause some alleged symptoms, he went on to determine whether her subjective statements about the limiting effects of her symptoms were

---

[6] 20 C.F.R. §§ 404.1567(b) and 416.967(b) define "light work" as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

credible in light of the entire record.  (See Dec. 19-20; Tr. 29-30).  The ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible for the reasons explained in this decision."  (Dec. 19; Tr. 29).

After explaining the basis for his RFC determination, the ALJ compared Topoulos' RFC to the physical and mental demands of her past work as a vice president, cashier, clerical worker and medical coder, and considered the VE's testimony that an individual with the same age, educational background, work experience, and RFC would be capable of returning to each of those positions.  (Dec. 22; Tr. 32, 101-102).  The ALJ concluded that Topoulos was capable of performing her past relevant work as the work is actually and generally performed in the national economy.  (Dec. 22; Tr. 32).

If an ALJ finds that the claimant has the RFC to perform her past relevant work, the claimant is deemed not to be disabled, and there is no need for the ALJ to proceed to step five.  See 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) ("[a]t the fourth step, we consider our assessment of your [RFC] and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled."); Seavey, 276 F.3d at 5 (explaining that "[a]ll five steps are not applied to every applicant, as the determination may be concluded at any step along the process.").  Thus, the ALJ's analysis concluded with the finding that Topoulos could perform her past relevant work.

Additional factual details relevant to this court's analysis are described below where appropriate.

### III.  ANALYSIS

In this action, Topoulos is seeking judicial review of the Commissioner's "final decision"
pursuant to the Social Security Act § 205(g), 42 U.S.C. § 405(g) (the "Act").  The Act provides in
relevant part as follows:

> Any individual, after any final decision of the Commissioner of Social
> Security made after a hearing to which he was a party, irrespective of the
> amount in controversy, may obtain a review of such decision by a civil
> action …. The court shall have power to enter, upon the pleadings and
> transcript of the record, a judgment affirming, modifying, or reversing the
> decision of the Commissioner of Social Security, with or without remanding
> the cause for a rehearing.  The findings of the Commissioner of Social
> Security as to any fact, if supported by *substantial evidence*, shall be
> conclusive ….

42 U.S.C. § 405(g) (emphasis added).  The Supreme Court has defined "substantial evidence" to
mean "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct.
1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.
Ct. 206, 217, 83 L. Ed. 126 (1938)); accord Irlanda Ortiz v. Sec'y of Health & Human Servs., 955
F.2d 765, 769 (1st Cir. 1991).

As the First Circuit has explained:

> In reviewing the record for substantial evidence, we are to keep in mind
> that "issues of credibility and the drawing of permissible inference from
> evidentiary facts are the prime responsibility of the [Commissioner]."  The
> [Commissioner] may (and, under [her] regulations, must) take medical
> evidence.  But the resolution of conflicts in the evidence and the deter-
> mination of the ultimate question of disability is for [her], not for the
> doctors or for the courts.  We must uphold the [Commissioner's] findings in
> this case if a reasonable mind, reviewing the record as a whole, could
> accept it as adequate to support [her] conclusion.

Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).  Therefore, "the court's function is a narrow one limited to determining whether there is substantial evidence to support the [Commissioner's] findings and whether the decision conformed to statutory requirements."  Geoffroy v. Sec'y of Health & Human Servs., 663 F.2d 315, 319 (1st Cir. 1981) (citations omitted).  "[T]he Court must uphold the Commissioner's determination, 'even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.'"  Amaral v. Comm'r of Soc. Sec., 797 F. Supp. 2d 154, 159 (D. Mass. 2010) (quoting Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987)).

"Even in the presence of substantial evidence, however, the Court may review conclusions of law, and invalidate findings of fact that are 'derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts[.]'"  Musto v. Halter, 135 F. Supp. 2d 220, 225 (D. Mass. 2001) (quoting Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam)) (internal citations omitted).  "Thus, if the ALJ made a legal or factual error, the court may reverse or remand such decision to consider new, material evidence or to apply the correct legal standard."  Ross v. Astrue, C.A. No. 09-11392-DJC, 2011 WL 2110217, at *2 (D. Mass. May 26, 2011) (internal citation omitted).

### A.    The Assessment of Plaintiff's Mental Health Impairments

Topoulos challenges the ALJ's finding at step two that her mental impairments are not severe.  "At Step 2, the claimant has the burden of proving, through objective medical evidence, that her impairments are severe."  Teves v. McMahon, 472 F. Supp. 2d 82, 86 (D. Mass. 2007).  Under the Social Security regulations, "[a]n impairment . . . is not severe if it does

not significantly limit [the claimant's] physical or mental ability to do basic work activities." Id. (quoting 20 C.F.R. § 404.1521(a)). "While it is true that the severity requirement is a *de minimis* standard 'designed to do no more than screen out groundless claims,' McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1123–24 (1st Cir. 1986), a claimant cannot satisfy the severity requirement 'when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs.'" Rivera v. Astrue, 814 F. Supp. 2d 30, 35 (D. Mass. 2011) (quoting SSR 85–28, 1985 WL 56856, at 3 (1985)). "Basic work activities" means "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b) and 416.921(b).[7] Examples of these include "[u]nderstanding, carrying out, and remembering simple instructions[,]" "[u]se of judgment[,]" "[r]esponding appropriately to supervision, co-workers, and usual work situations[,]" and "[d]ealing with changes in a routine work setting[.]" Id.

On appeal, Topoulos argues that the ALJ's finding that her mental impairments are not severe "is contrary to [her] sworn testimony and the medical evidence submitted." (Pl. Mem. at 7). In support of this argument, she identifies several medical records that she believes support the conclusion that her mental impairments are severe. (See id. at 7-11). These records include a note from Dr. Weinstein, dated September 30, 2010 containing a lengthy medical history in which there is a note that at some unspecified date, Topoulos had "increasing symptoms of depression," had been seen in the emergency room at South Shore Medical Center on April 21, 2009, and "was referred for outpatient psychiatric follow-up" (Tr.

---

[7] Text effective until March 27, 2017. As of March 27, 2017, text located at 20 C.F.R. §§ 404.1522(b) and 414.922(b).

739-40); a treatment note from Berry & Lobel, dated May 25, 2011 stating that Topoulos "continues to struggle with depression which results from chronic pain, aging, loss of best friends, etc." (Tr. 330); treatment notes from Topoulos' first two sessions with Ms. Smith at Starr (Tr. 572, 566); an undated letter from Ms. Smith to BC/BS of MA requesting continued weekly psychotherapy and making a case for why Ms. Smith considered continued treatment to be medically necessary for Topoulos (Tr. 623); a treatment note from Ms. Smith dated July 23, 2013 stating "[c]all placed to PCP who stated 'I believe [Topoulos] is 100% physically and emotionally disabled'" (Tr. 624); and treatment notes from Dr. Murray, including portions of Dr. Murray's intake notes (Tr. 658) and portions of treatment notes from two other sessions.  (Tr. 662, 663).

Topoulos does not argue that the ALJ failed to consider the evidence that she identifies in her brief.  Indeed, the ALJ explicitly referenced the majority of the records Topoulos identifies in her brief.  (See Tr. 330 and Dec. 6, Tr. 16; Tr. 572 and Dec. 6, Tr. 16; Tr. 658, 662, and 663 and Dec. 9, Tr. 19).  Topoulos also does not argue that the ALJ made an error of law in weighing the record evidence.  Nor does she argue that the evidence upon which the ALJ supported his conclusion is flawed.  Thus, her challenge to the ALJ's decision is that facts exist in the record which could support a different conclusion than that reached by the ALJ.

However, as noted above, "factual inferences, credibility determinations, and resolutions of conflicts in the evidence are reserved to the Commissioner[,]" Conte v. McMahon, 472 F. Supp. 2d 39, 46 (D. Mass. 2007) (citing Rodriguez, 647 F.2d at 222), and "the Court must uphold the Commissioner's determination, 'even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.'"  Amaral, 797 F. Supp. 2d at 159

(quoting Rodriguez Pagan, 819 F.2d at 3).  Thus, "[a]s the resolution of conflicts in evidence is the role of the hearing officer, not the Court, it is only necessary in this instance to determine whether there is substantial evidence to support the hearing officer's conclusions." Green, 588 F. Supp. 2d at 153 (citing Irlanda Ortiz, 955 F.2d at 769).

This court finds that the ALJ's determination that Topoulos' mental impairments are not severe is supported by substantial evidence.  In determining whether Topoulos' claimed mental impairments are severe, the ALJ properly used the "special technique" for evaluating the severity of mental impairments for adults pursuant to 20 C.F.R. §§ 404.1520a and 416.920a. After first determining, pursuant to 20 C.F.R. §§ 404.1520a(b)(1) and 416.920a(b)(1), that Topoulos had been diagnosed with "major depressive disorder, anxiety disorder, panic attacks with agoraphobia, mood disorder and attention deficit disorder" (Dec. 10; Tr. 20), the ALJ considered "all relevant evidence to obtain a longitudinal picture of [her] overall degree of functional limitation" by taking into consideration relevant medical findings, the effects of Topoulos' symptoms, and how her functioning was affected "by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment." 20 C.F.R. §§ 404.1520a(c)(1) and 416.920a(c)(1).  (See Dec. 6-10; Tr. 16-20).

After detailing and assessing the record, the ALJ concluded that the medical evidence "as a whole shows that the claimant has been able to function quite well since her alleged onset date[,]" noting that even though "[s]he does become overwhelmed by her situation, particularly in regards to her relationships with her boyfriend and children[,]" "she continues to engage in a full range of activities."  (Dec. 10; Tr. 20).  In assessing her record as a whole, the ALJ noted that "[w]hen the claimant was in treatment at [Starr] and taking her prescribed

medications, she had an improved mood and functioning[,]" and he gave "great weight to these records as indicating [Topoulos'] true functional capacity with appropriate treatment." (Id.). Conversely, the ALJ explained why he was giving "very little weight" to Dr. Murray's opinion, including that Dr. Murray did not have Topoulos' complete counseling history and Topoulos was no longer taking the medications that had been effective in the past. There is ample support in the record for the ALJ's decision.

In assessing Topoulos' degree of functional limitation, the ALJ also properly considered "the four broad functional areas" "known as the 'paragraph B' criteria" which are "set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1)." (Id.). These four functional areas are "activities of daily living," "social functioning," "concentration, persistence or pace," and "episodes of decompensation." 20 C.F.R. § 404.1520a(c)(3)) and 416.920a(c)(3).[8] Pursuant to the social security regulations, the first three of these criteria are to be marked using a "five-point scale: none, mild, moderate, marked, and extreme." Green v. Astrue, 588 F. Supp. 2d 147, 152 (D. Mass. 2008) (citing 20 C.F.R. § 404.1520a(c)(4)). (See Dec. 10-11; Tr. 20-21). The fourth functional area is rated on a four-point scale: "[n]one, one or two, three, [and] four or more." 20 C.F.R. §§ 404.1520a(c)(4) and 416.920a(c)(4).[9] A rating of "none" or "mild" in the first three functional areas and "none" in the fourth, generally means that the impairments are "not severe, unless the evidence otherwise indicates that there is more than a minimal

---

[8] Effective June 13, 2011 to January 16, 2017.

[9] Effective June 13, 2011 to January 16, 2017.

limitation in [one's] ability to do basic work activities."  20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).

In rating Topoulos' functional limitations, the ALJ concluded that Topoulos had a "mild" limitation in the functional areas of "activities of daily living," "social functioning," and "concentration, persistence or pace," and that there was no evidence that Topoulos had experienced "any episodes of decompensation, which have been of extended duration."  (Dec. 10-11; Tr. 20-21).  These assessments are supported by substantial evidence in the record.

With regard to the functional area of "activities of daily living," the ALJ concluded that Topoulos' limitation was "mild" based on evidence from Topoulos' social security administration function report which she submitted on May 4, 2013 as part of her application for social security benefits (Tr. 273-78), treatment notes from Ms. Smith (Tr. 561-630), and portions of the claimant's hearing testimony (Tr. 47-106).  These established that Topoulos was able to perform "personal care tasks and light household chores," "prepare meals for her[self] and her children," "care[] for five cats," "food shop[] in stores," watch TV, "occasionally use[] her tablet to surf the internet and check her Facebook account," "attend medical and therapy appointments," and "drive a car."  (Dec. 10; Tr. 20; see also Tr. 81-82, 274, 276-77, 619).  The ALJ also relied on the reports of the two state agency psychological consultants, Dr. Collins-Wooley and Dr. Maliszewski, who both opined that Topoulos had only "mild" functional limitations in daily activities.  (Tr. 113-14; 140-41).

The ALJ's conclusion that Topoulos had only mild limitations in social functioning was also supported by substantial evidence.  Citing to the social security administration function report submitted by the claimant and her hearing testimony, the ALJ concluded that Topoulos

"has been able to sustain significant interpersonal relationships" with her husband, with whom the record evidence shows that she was able to negotiate alimony, health insurance, and housing despite their long-term separation; her three adult children, two of which lived with her; her long-term boyfriend of 14 years, who lived with her for at least six years; and two close friends.  (Dec. 10; Tr. 20; <u>see</u> <u>also</u> Tr. 59, 61, 63, 81).  In further support of his conclusion of only mild limitation to Topoulos' social functioning, the ALJ cited Topoulos' ability to shop in stores despite anxiety, and her ability "to interact appropriately with treatment providers."  (Dec. 10; Tr. 20; <u>see</u> <u>also</u> Tr. 276, 316, 584, 607).  The ALJ also relied on Dr. Collins-Wooley's and Dr. Maliszewski's opinions that Topoulos had only "mild" limitations in social functioning.  (Tr. 113-14; 140-41).

With regard to the functional area of concentration, persistence, or pace, the ALJ supported his conclusion that Topoulos had only a "mild" limitation, with evidence from Ms. Smith's treatment records and the claimant's own social security administration function report.  Specifically, he noted that Topoulos' "mental health and psychopharmacological treat-ment notes show full orientation, logical and coherent thought process and content without evidence of psychosis."  (Dec. 10; Tr. 20; <u>see</u> <u>also</u> Tr. 329, 582, 584, 593, 602, 607, 609).  He also noted that "[w]hile the claimant alleged fatigue and chronic pain affected her concentration and memory and Ms. Smith, her therapist, observed some disorganization," Topoulos was able to concentrate sufficiently to work at her boyfriend's bindery in 2013 and to make jewelry as a hobby.  (Dec. 10; Tr. 20; <u>see</u> <u>also</u> Tr. 593, 599, 603, 605, 607, 613, 614, 617).  In further support of his conclusion, the ALJ cited to the fact that Topoulos could drive a car, make meals for everyone in her household for one to one and a half hours, shop for food twice a week for an

hour at a time, and take care of her children and five cats.  (Dec. 10; Tr. 20; <u>see also</u> Tr. 274-76).

The ALJ also relied on Dr. Collins-Wooley's and Dr. Maliszewski's opinions that Topoulos had

only "mild" limitations in this area.  (Dec. 10-11; Tr. 20-21).

Finally, the ALJ noted that with respect to the fourth functional area, there was no

evidence in the record that Topoulos experienced any episodes of decompensation of extended

duration.  (Dec. 11; Tr. 21).  Therefore, as the ALJ properly followed the specific guidance

required in determining whether a claimant's mental impairments are "severe" and supported

his conclusion with substantial evidence, this court finds no error.

Topoulos' citations to the record in support of her argument to the contrary are

unavailing.  None of the records cited by Topoulos contain treatment or examining source

opinions regarding mental functional limitations.  To the extent that Topoulos cites Ms. Smith's

notation that Dr. Weinstein stated he believed Topoulos was "100% physically and emotionally

disabled" (Tr. 624), counsel for the claimant acknowledged at oral argument that Dr. Weintein

did not state that opinion in his own notes.  Furthermore, the ALJ was not required to accept

that opinion, given that it is an opinion on disability, an issue for the Commissioner to decide.

<u>See</u> 20 C.F.R. §§ 404.1527(d) and 416.927(d).  Furthermore, to the extent that Topoulos bases

her argument on her own self-reported functional limitations, the ALJ found Topoulos' self-

reported limitations not credible in light of her self-reported activities, including those

memorialized in Ms. Smith's treatment notes regarding her working more than 40 hours a week

at the bindery during the period in which she claimed her mental impairments were disabling.

(Dec. 4-5, 20-21; Tr. 14-15, 30-31).  <u>See</u> <u>Green</u>, 588 F. Supp. 2d at 153 (ALJ may take into

consideration claimant's description of daily activities in credibility assessment).

Thus, this court finds that the plaintiff has not met her burden of proving that her impairments are severe and finds that there is substantial evidence to support the determination that her impairments do not significantly limit her ability to do basic work activities. See Teves, 472 F. Supp. 2d at 86.

B.     **Capacity to Perform to Past Relevant Work**

Topoulos also challenges the ALJ's determination that she is capable of performing her past relevant work.  Specifically, she argues that the ALJ failed to properly credit her testimony that her pain resulted in poor memory, lack of concentration, a need to lie down, and a need for absenteeism.  (Pl. Mem. at 6; see also id. at 3-4 (identifying Topoulos' testimony as to those limitations)).

This court finds her argument unavailing.  In his decision, the ALJ identified and acknowledged Topoulos' testimony regarding the effect of her back pain on her memory and concentration, her to need to lie down, and her ability to work.  (Dec. 19; Tr. 29).  He then found her "statements concerning the intensity, persistence, and limiting effects of those symptoms" to be "not entirely credible" for a variety of reasons.  (Dec. 19-21; Tr. 29-31).  The ALJ then proceeded to detail, over the course of two pages, the reasons he found Topoulos' assertions regarding her pain were not credible, including that "the evidence strongly suggest[ed]" that she was working in 2013 and that the medical evidence as a whole did not support her claims of severe pain.  (Dec. 20; Tr. 30).  As stated above, "factual inferences, credibility determinations, and resolutions of conflicts in the evidence are reserved to the Commissioner."  Conte, 472 F. Supp. 2d at 46.  The ALJ was not obligated to accept Topoulos' testimony about her level of impairment in light of the contradictory evidence in the record.

In the instant case, the ALJ's conclusion that Topoulos' residual functional capacity is such that she could still perform her past work is supported by substantial evidence. Specifically, the ALJ noted that Topoulos did not provide any treating source statement of physical limitation with regard to her pain, and noted that no treating source had ever advised the claimant to refrain from physical activities. (Dec. 21; Tr. 31). On appeal, Topoulos does not contest these facts. The ALJ then gave "great weight" to the opinions of two state agency physicians who reviewed the medical record and opined that Topoulos could meet the exertional requirements of light work with some physical limitations, and assessed an RFC with additional physical limitations. (Dec. 21-22; Tr. 31-32; see also Tr. 115-18, 127-28, 141-44, 154-57).

Finally, after considering the testimony of the VE that an individual with the same age, educational background, work experience and RFC would be capable of returning to Topoulos' previous positions, the ALJ determined that Topoulos was capable of performing her past work as it is actually and generally performed in the national economy. (Finding #6; Tr. 32). This court finds that determination to be based on substantial evidence.

## IV. CONCLUSION

For all the reasons detailed herein, this court finds that the Commissioner's decision that Topoulos was not "under a disability," as defined in the Social Security Act, was supported by substantial evidence. Therefore, this court recommends to the District Judge to whom this case is assigned that plaintiff's motion to reverse the Commissioner's decision (Docket No. 16)

be DENIED and the defendant's motion to affirm the Commissioner's decision (Docket No. 17)

be ALLOWED.[10]

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

---

[10] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985). Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).